IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

DONMAR EQUITIES LLC

Case No. 11-04770

CHAPTER 11

Debtor and Debtor in
Possession.

## DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF REORGANIZATION OF DONMAR EQUITIES LLC

Dated: January 24, 2012

### DISCLAIMER

The information contained in this Disclosure Statement ("Disclosure Statement") is included herein for purposes of soliciting acceptances of the Debtor in Possession's Plan of Reorganization ("the Plan") and may not be relied upon for any purpose other than to determine how to vote on the Plan. No person may give any other information or make any other representations regarding the Plan or the solicitation of acceptances of the Plan. The information contained in this Disclosure Statement is believed to be accurate and truthful to the best of the Debtors in Possession's knowledge, information and belief, as of the date hereof.

This Disclosure Statement has been prepared in accordance with Section 1125 of the United States Bankruptcy Code, with Rule 3016 of the Federal Rules of Bankruptcy Procedure, and consistent with the disclosure requirements outlined in *In Re Metrocraft Publishing Services, Inc.*, 39 BR. 567 (Bkrtcv. 1984). It has not been prepared in accordance with securities laws or other non-bankruptcy law.

As to any and all contested matters, adversary proceedings, or other actions, whether now pending, or filed in the future, nothing contained in this Disclosure Statement shall constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as statements made in settlement negotiations- This Disclosure Statement shall not be admissible in any non—bankruptcy proceeding- Nothing contained in this Disclosure Statement is intended to be, nor should be construed as, conclusive advice on tax issues or consequences or any other legal effects of the Plan

# OVERVIEW OF PROCEEDING

## A. History.

Over the last twenty years Don Rapp with his wife Marsha acquired numerous rental properties in Frankfort, Indiana. Properties would be acquired and some would be rented and retained. Others would be rented, renovated and sold. During the last few years the business was impacted by three significant factors.

1. The modification of Indiana's real estate taxation system resulted in the properties being reassessed at fair market value. This resulted in a significant increase in real estate taxes. The increase in taxes had a substantial negative effect on cash flow.
2. The cost of utilities increased significantly. Since many of the properties were centrally metered for utilities the increased cost of the utilities was a direct expense to the property owner. This also had a negative effect on cash flow.
3. The recession resulted in an increase in vacancies and an overall inability to raise rents to meet increased expenses. Rent collections also deteriorated as the financial condition of tenants worsened. The real estate recession also resulted in a market in which selling property became very difficult.

The properties fell behind in real estate tax payments. The properties were set for tax sale. This Chapter 11 was filed to protect the assets of the Debtor pending the filing of a plan which would pay in full the real estate taxes.

In order to better organize the operations the parties formed DonMar Equities LLC in December 2009 and conveyed the properties to the LLC.

## B. Filing The Case

The management of Debtor determined, in their sound judgment that a filing of a Petition under Chapter 11 was the only realistic option of reorganizing and paying creditors. Thus, this case was filed on April 19, 2011

## C. Future Income and Expenses

Since the filing, the Debtor has continued to operate its properties. Revenue has been increased, and expenses, particularly real estate taxes and natural gas, have decreased. The occupancy rate of the properties has increased significantly.

# SUMMARY OF THE CHAPTER 11 CASE

The case was commenced on April 19, 2011 with the filing of the voluntary petition.

Since that time Debtor in Possession has filed all of its monthly operating reports with the Office of the United States Trustee and has paid all of its quarterly fees.

All post petition taxes are current and all required post petition tax returns have been filed. The Debtor has operated from the funds generated from operations. This Disclosure Statement is submitted for the purpose of explaining the Plan. Upon Court approval this disclosure statement will be utilized to solicit votes in favor of accepting the Plan.

## INCOME TAX CONSEQUENCES OF THE PLAN

The description of tax consequences below is for informational purposes only. Only the principal consequences of the Plan for the Debtors and for Holders of Claims who are entitled to vote to accept or reject the Plan are described in generalities below. No opinion of counsel or *CPA* has been sought or obtained with respect to any tax consequences of the Plan. No rulings or determinations of the Internal Revenue Service ("the IRS") or any other tax authorities have been sought or obtained with respect to the tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. The Debtors are not making any representations regarding any particular tax consequences of the confirmation of the Plan and/or its subsequent consummation, as to any Claim holder, and is not rendering any form of legal opinion as to such tax consequences. Each holder of a Claim is strongly urged and encouraged to consult its tax advisor regarding any and all tax consequences of the transactions described in this Disclosure Statement, in the Plan, and/or in the Confirmation Order.

**A. Federal Income Tax Consequences to the Debtor.**

There is no tax avoidance agenda in the proposed Plan, nor was there any such motive in seeking relief under Title 11. The Debtors will commence paying their post petition tax liabilities on a regularly scheduled basis, pursuant to the same tax accounting method as was their usual and ordinary custom and practice prior to filing this case under Title 11. All pre-petition tax debts owed by these Debtor, will be paid in full through the Plan as required by 11 U.S.C. Sec. 1129(a)(9) C). Cancellation of Debt ("COD") income will not be an issue in this case because this Chapter 11 proceeding would be subject to the insolvency exception of COD income. Moreover, no new entity is being created in the Plan. No shares are being transferred to new owners, and the estate is not acquiring any new assets by merger, acquisition or otherwise.

**B. Federal Income Tax Consequences to Claim Holders.**

The income tax consequences of the transactions contemplated by the Plan to a Claim Holder will depend upon/ a variety of factors, including the characterization and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan; the manner in which a holder acquired a claim; the length of time the Claim has been held; whether the Claim Holder has taken a bad debt deduction with respect to any portion of the Claim; the method of tax accounting of the Claim Holder; whether the Claim is an installment obligation for federal tax purposes; and other factors. For these and other reasons,

Claim Holders should consult their tax advisors for information that may be relevant to their particular situation and circumstances and seek independent professional tax advice as to the particular tax consequences to then of the transactions contemplated by the Plan.

## SUMMARY OF THE PROPOSED PLAN

All creditors are being paid at least a portion of their claim. The impaired classes are Classes One, Two (2), and Three (3). There are no unimpaired classes. In accordance with Section 1123 (a) (1) of the Bankruptcy Code administrative claims have not been classified.

## ARTICLE II
## Classification of Claims and Interests

**Class One** consists of the claim(s) of the Treasurer of Clinton County, Indiana, as finally approved and allowed.

**Class Two** consist of the allowed claim(s) of general unsecured creditors.

**Class Three** consists of the holders of Equity Interests in the Debtor.

## ARTICLE III
## Identification of Impaired and Unimpaired Claims and Interests

(a) **Unimpaired Claims and Interests.** There are no unimpaired classes.

(b) **Impaired Claims and Interests.** All classes are impaired in various ways.

(c) **Administrative Claims and Priority Tax Claims.** In accordance with Sec. 1123(a) (1) of the Bankruptcy Code, these claims have not been classified, and their respective treatments are set forth in Article IV below.

(d) **Equity Interests.** Don H. Rapp and Marsha Rapp hold 100% of the equity interest in the Debtor and shall retain that interest under the Plan.

## ARTICLE IV
## Treatment of Certain Unclassified Claims

(a) **Administrative Claims Against the Debtor in Possession.** Unless otherwise agreed to by the particular claim holder based on estimates and an

appropriate schedule of distributions, any holders of allowed Administrative Claims against the Debtor in Possession entitled to priority under Section 507(a) (2) of the Bankruptcy Code shall receive on account of such allowed Administrative Claims or administrative expenses cash in an amount of such allowed Administrative Claims or expenses on the Initial Distribution Date of the Plan.

(b) **Allowed Administrative Claims** in connection with fees for services rendered after the Confirmation Date, but prior to the Effective Date will be paid by the Debtor as an ordinary operating expense. Professional fee expenses for services rendered after the Effective Date will be paid by the Debtor in Possession as an ordinary operating expense.

(c) **Bar Date for Filing Applications for Allowance and Payment of Administrative Expense Claim.** Applications for allowance and payment of Administrative Claims must be filed on or before the Effective Date of the Plan. The Court shall not consider any applications for allowance of Administrative Claims filed after the Effective Date. The Debtor-in-Possession and other interested parties shall have 30 days from and after the Effective Date in which to object to Administrative Claims.

(d) **Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim shall be entitled to receive on account of such Priority Tax Claim in full satisfaction, settlement, release and discharge of and in exchange for such Priority Tax Claim:
(1) Regular installment payments in cash of a total value, as of the Effective Date of the Plan, equal to the amount of such claim, over a period of time not longer than two (2) years after effective date, or
(2) Such other treatment agreed to by the Allowed Priority Tax Claim holder and the Debtor.
In this case, there are no priority tax claims.

(e) **United States Trustee Fees.** The Debtor, including the reorganized Debtor (or other responsible party) is responsible for payment of fees to the United States Trustee, pursuant to 28 USC Sec. 1930 (a)(6) for each quarter the case remains open until closed, dismissed or converted by court order. It is anticipated that this obligation will be in the sum of $325.00 per quarter, but the actual fee is calculated based on the total of all disbursements or payments for each quarter, including post confirmation payments and operating expenses. All fees accruing to the date of confirmation will be paid within 15 days of entry of the order confirming the plan. After confirmation, and so long as the case remains open, the Debtor, including the reorganized debtor (or other responsible party), shall serve on the United States Trustee a financial report. The financial report shall be in a format acceptable to the United States Trustee. The report shall be filed by the 15th day of the month following each calendar quarter, for the preceding quarter, or any portion thereof. The Debtor

as the case remains open, the Debtor, including the reorganized debtor (or other responsible party), shall serve on the United States Trustee a financial report. The financial report shall be in a format acceptable to the United States Trustee. The report shall be filed by the 15th day of the month following each calendar quarter, for the preceding quarter, or any portion thereof. The Debtor will pay the quarterly fee no later than the last day of the month following each calendar quarter.

**(f) Administrative Claims of the Internal Revenue Service.** To the extent the Internal Revenue Service (hereinafter: IRS) has an administrative claim, it shall be paid in full on the effective date of confirmation. Further as a precondition of confirmation of any plan proposed by the debtor, the debtor shall deposit the amount of the administrative claim of the IRS in its counsel's trust account at least one day prior to submitting any confirmation order to the Court. The government shall provide the debtor with the amount of its administrative claim to the extent it differs from any filed administrative claim, including accruing interest and penalties computed to a date certain at any time prior to one week before a scheduled confirmation hearing. The failure of the IRS to provide a payoff of its administrative claim will not waive the rights of the IRS to receive full payment of its administrative claim, rather it would relieve the debtor of the duty to deposit any sums beyond the amount in any filed administrative claim.

## ARTICLE V
## Treatment of Unimpaired Claims

There are no unimpaired claims.

## ARTICLE VI
## Treatment of Impaired Claims

**Class One**. The claim of the Treasurer of Clinton County shall receive the following treatment under this Plan:

1.
   The Treasurer of Clinton County shall receive no distribution for the real estate taxes on the properties shown as no distribution properties on Exhibit A to this Disclosure Statement. These properties shall be abandoned from the bankruptcy estate on the effective date of the Plan and the stay shall be lifted to permit the Treasurer of Clinton County to pursue state law remedies for the collection of real estate taxes.   After abandonment, neither the debtor nor the bankruptcy estate will have no further obligation for real estate taxes on these properties.

**Class Two:** The creditors in Class Two shall receive the full value of their claim in thirty-six equal monthly installments without interest, the first installment to be made on the initial distribution date or may elect to receive 80% of its claim in cash on the initial distribution date. .

**Class Three:**

The equity owners Don H. Rapp and Marsha Rapp shall retain their ownership interest in the Debtor.

## REVIEW OF THE PROPOSED PLAN

The proposed Plan of Reorganization has been filed with the United States Bankruptcy Court for the Southern District of Indiana on January 24, 2012 in the case and can be reviewed on line via PACER. Moreover, copies of the proposed Plan are available from Debtor's counsel upon request, for the purposes of information and review only and not for the purpose of soliciting its acceptance at this time. Copies of the Plan will also be provided with this Disclosure Statement, but again for information and review only; Solicitation of the Plan's acceptance will come only after the Court has approved the adequacy of the Disclosure Statement.

## FEASIBILITY OF THE PLAN AND BEST INTERESTS OF CREDITORS

### A. Means for Plan's Implementation

### Means for Plan's Implementation

The Debtor shall retain all of the estate's property, except as otherwise provided in this Plan. The Debtor shall retain the present management to implement the Plan.

The Plan will be funded by capital contributions from the equity owner and other investors, as well as income from the property. The Plan may also be funded by new financing secured by the property of the Bankruptcy estate or unsecured loans.

Pursuant to 11 U.S.C. Sec. 1123(a)(5) Debtor also provides in its Plan for the satisfaction and modifications of certain liens, curing and waiving various defaults, the extension of maturity dates and changes in interest rates or other terms of outstanding security instruments.

The liens of the following creditors shall continue in effect but only to the extent of the value of the collateral securing the lien. The creditor who shall maintain lien rights, as limited above, is the Treasurer of Clinton County, Indiana.

All other liens in existence prior to the filing of this petition under Chapter 12 shall be deemed void and of no effect except to the extent that said Plan provides for the continuation of said lien.

Lastly the Plan leaves pending under the jurisdiction of this Court various litigation in which any favorable resolution assists the debtor in expediting the plans implementation, consummation and performance.

The payment of any and all claims as provided for herein shall constitute full settlement and complete satisfaction of said claims. Any creditor provided for in this Plan shall be enjoined from collecting any debt from the Debtor arising prior to confirmation. Any creditor provided for in this Plan is further enjoined from taking any action to foreclose on any lien it has on any of the assets which the Debtor is retaining through this Plan.

## B. Feasibility of the Plan/Financial Projections

In order for the Plan to be confirmed, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to Section 1129(a) (11) of the Code. The Court will accordingly, need to determine that the proposed reorganization under the Plan is likely to be successful and that subsequent reorganization or liquidation is not likely.

Debtors assert that the Plan is feasible and that the rental income of the properties coupled with cash flow from the sale of certain properties from time to time will result in sufficient funds to meet its obligations under the Plan of Reorganization. In support of this assertion, the Debtors offer the relevant financial information shown in the monthly operating reports filed with the United States Trustee. These reports indicate that the Debtor has sufficient cash flow to make plan payments to the Treasurer of Clinton County as well as to establish a tax escrow capable of paying future real estate taxes as they come due, as well as paying the priority claims provided in the Plan.

## C. Best Interests Test/Liquidation Analysis.

Even if the Plan is accepted by creditors and deemed feasible, pursuant to Section 1129(a) (7), the Court still has to determine that the proposed Plan meets the "Best Interest of Creditors" test. If this test is met, the Court can confirm the Plan even if all creditors do not accept or vote in favor of the Plan. The "Best Interest" test means that creditors or claim holders will receive at least as much under this Reorganization Plan as they would under a forced liquidation as would occur in a case under Chapter 7 of the Bankruptcy Code. In this Plan, the creditors are being paid their claims in full which is what they would receive in Chapter 7 liquidation.

Had the Debtor's filed chapter 7, its properties would be subject to liquidation and the proceeds distributed for the benefit of the Treasurer of Clinton County. In the event of a Chapter 7 filing it is unlikely that a forced sale of the properties would result in an amount be realized that would be sufficient to pay the Treasurer of Clinton County. All of the Debtor's properties are located in Frankfort, Indiana. A forced sale would result in sixty properties on the market at the same time, which under current market conditions would result in severe discounts to the actual value of the property. Recent tax sales of property have often not produced sufficient proceeds to pay the outstanding tax claim. As a result the properties have been acquired by Clinton County and sold at an amount insufficient to pat the tax bill.

### D. The Plan Of Reorganization by Contrast.

Under the reorganization proposed by Debtor's Plan, as contrasted with the foregoing Chapter 7 liquidation, the Treasurer of Clinton County will receive the full claim. Accordingly creditors will fare better under the reorganization than they would under liquidation. The priority creditors and unsecured creditors will fare substantially better. The Debtor will pay 100% of the unsecured claims, over the period of the Plan, to unsecured creditors when Chapter 7 liquidation would yield them little or no dividend whatsoever.

## BANKRUPTCY CLAIMS

To the best of the debtors' knowledge, information, and belief, there are no other bankruptcy claims or causes of action against any entity, individual or insider that arose before or after the commencement date including, but not limited to, rights, claims, causes, of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

## SOLICITATION/VOTING PROCEDURES

Under Section 1124 of the Bankruptcy Code, a class of claims or interest that is impaired (and deemed allowed) is entitled to vote to accept or reject the Plan. There are no impaired classes entitled to vote under this Plan. Unless an objection is made to the Plan, confirmation and payments will follow. If there is an objection to the Plan, the Court will hold a hearing to determine the validity of the objection. In the event any objection is sustained the Debtor may seek to amend the Plan to satisfy the terms of the objection.

Upon the Court's approval of the adequacy of this Disclosure Statement, the Debtor in Possession will solicit acceptance of the Plan. **Ballots should be sent to *Alfred E. McClure at McClure & O'Farrell, 200 Professional Court, Suite D, Lafayette, Indiana 47905* by** close of business (5:00 p.m. EST) on _____ , 2011. Ballots received after that time will not be counted.

## INTERNET ACCESS TO BANKRUPTCY COURT DOCUMENTS

Any and all documents filed with the Bankruptcy Court in this Chapter 11 case, as well as other bankruptcy documents and information may be found, downloaded and printed from the website for the United States Bankruptcy Court for the Southern District of Indiana, found at *ecf.insb.uscourts.gov* or by logging on to Pacer, or by requesting same from Alfred E. McClure, counsel for the Debtors in Possession.

## RECOMMENDATION TO APPROVE

For all of the reasons set forth in the Plan and in this Disclosure Statement, the Debtor believes that rapid confirmation, implementation and consummation of the proposed Plan is preferable to all other alternatives. Accordingly, Debtor urges all Creditors to not object to the adequacy of this Disclosure Statement and to approve/vote in favor of the Plan.

DONMAR EQUITIES LLC            Dated: January 24, 2012
BY *Don Rapp*
Don Rapp, Manager

/s/ *Alfred E. McClure*
Alfred E. McClure
McClure & O'Farrell, P.C.
200 Professional Court, Suite D
Lafayette, Indiana 47905
amcclure@mcclureofarrell.net
Attorneys for the Debtor

### Certificate of Service

I hereby certify that service of the preceding document was sent electronically via the Bankruptcy Clerk's ECF System, facsimile or has been made by placing a copy thereof in the untied states mail, first class, postage prepaid, this 24th day of January 2012 addressed to the following:

Charles Wharton
Office of United States Trustee
101 West Ohio Street, Suite 1000
Indianapolis, Indiana 46204

/S/ *Alfred E. McClure*
Alfred E. McClure

DONMAR EQUITIES LLC
CASE NO. 11-04770
PLAN OF REORGANIZATION
DISCLOSURE STATEMENT

EXHIBIT "A"

The following properties are no distribution properties and are abandoned from
The Bankruptcy Estate

407 W Boone Street, Frankfort, Indiana
409 W Boone Street, Frankfort, Indiana
455 E Washington Street, Frankfort, Indiana